**Bradley M. Ganz**
OSB 94076
mail@ganzlaw.com
**Lainie Block**
OSB 94252
lainie@ganzlaw.com
Ganz Law, PC
PO Box 2200
163 SE 2nd Avenue
Hillsboro, OR 97124
(503) 844-9009

Attorney for Plaintiffs
Passages Silver Strand LLC and
Grasshopper House LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **Grasshopper House LLC**, a California limited liability company doing business as Passages Malibu, **Passages Silver Strand LLC**, a California limited liability company,<br><br>        Plaintiffs,<br>  vs.<br><br>**Renaissance Malibu Foundation**, a California non-profit corporation<br><br>        Defendant<br><br>**Salvatore Petrucci**, an individual; **Renaissance Recovery Services, LLC**, a California limited liability company; **NNB Recovery Services, LLC**, a California limited liability company.<br><br>Additional Parties Bound By Injunction | Civil Case No.: 3:09-CV-778-HA<br><br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY SALVATORE PETRUCCI, RENAISSANCE RECOVERY SERVICES LLC, NNB RECOVERY SERVICES LLC, AND RENAISSANCE MALIBU FOUNDATION SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATION OF INJUNCTION** |

### I.     Introduction

Pursuant to Fed.R.Civ.P. 65(d), 70, and 71, Plaintiffs request an order to show cause why

Salvatore Petrucci, Renaissance Recovery Services LLC, NNB Recovery Services LLC, and

Renaissance Malibu Foundation should not be held in civil contempt for violating this Court's

injunction.  CEO Petrucci and affiliated entities under his control are within the scope of the

injunction ordered against Defendant Renaissance Malibu Foundation and its "officers, directors, employees, agents, servants, and all persons, firms, corporations, franchisees and associates in concert or participation with Defendants" against using Plaintiffs trademarks in internet advertising.  Petrucci, Renaissance Recovery Services LLC, and NNB Recovery Services LLC are non-party legal affiliates of Defendant with actual notice of the injunction who are willfully violating the injunction.  The entities are closely intertwined under the common control of Petrucci with shared officers and employees, the same website, address, email, fax, and phone numbers.  Plaintiffs continue to suffer harm given that Petrucci and his related entities willfully continue to use Plaintiffs trademarks in their internet advertising to lure and misdirect customers.

## II.    Legal Standard

Fed.R.Civ.P. 65(d) provides that orders are binding upon parties to the order and their "officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." "[T]o be held liable in contempt, it is necessary that a non-party respondent must either abet the defendant [in violating the court's order] or be legally identified with him" and that the non-party have notice of the order.  *NLRB v. Sequoia District Council of Carpenters,* 568 F.2d 628, 633 (9th Cir. 1977)(quotation omitted).  An injunction is binding on a non-party which has actual notice and is the alter ego of, or has an identity of interest with a party.  *Peterson v. Highland Music, Inc*., 140 F.3d 1313, 1323-24 (9th Cir. 1998).

Fed.R.Civ.P. 71 grants to the district courts the power to enforce orders against "a person who is not a party . . . as if a party."  Hence, when an injunction is addressed to a non-party and he is given notice of the injunction, Rule 71 permits a district court to use "the same processes for enforcing obedience to the order as if [he were] a party," such as holding him in contempt for violating it.  *See, Peterson,* 140 F.3d at 1323.  "Rule 71 was intended to assure the process be

made available to enforce court orders in favor of and against persons who are properly affected

by them, even if they are not parties to the action." *Westlake North Property Owners Ass'n v.*

*Thousand Oaks*, 915 F.2d 1301, 1304 (9th Cir. 1990). The party seeking to enforce the terms of

an injunction against a non-party bears the burden of showing that the person sought to be

enjoined is properly within the scope of the injunction. *People v. Operation Rescue National*, 80

F.3d 64, 70 (2d. Cir. 1996).

   When a corporation refuses to abide by an order directing it to perform an act, and the

corporation is under the control of an officer or managing agent, the officer may be held in

contempt, even when the officer is not a party to the underlying action. *Irwin v. Mascott*, 370

F.3d 924, 931-32 (9th Cir. 2004). "An order to a corporation binds those who are legally

responsible for the conduct of its affairs." *Peterson,* 140 F.3d at 1323-24; *NLRB,* 568 F.2d at

633 ("It can hardly be argued that the principal officers of a labor union are not legally identified

with it, and thus liable in contempt for disobeying an order directed to the union.") *Backo v.*

*Local* 281, 438 F.2d 176, 180-81 (2nd Cir. 1970), *cert.denied*, 404 U.S. 858, 92 S.Ct 110, 30

L.Ed.2d 99 (1971)(non-party union leaders held in contempt when they were given notice of the

court order and treated it as a "big joke").

   In order to hold a corporate officer in contempt, the movant must show that he or she had

notice of the order and its contents. *Electrical Workers Pension Trust Fund of Local Union #58,*

*IBEW v. Gary's Elec. Service Co*., 340 F.3d 373 (6th Cir. 2003)(non-party officer and

shareholder held in contempt for failure to obey court's judgment and order). "De facto as well

as de jure officers are responsible for enabling a corporation to comply with orders directed to

it." *United States v. Laurins*, 857 F.2d 529, 535 (9th Cir. 1988) (former managing director

connected with tax shelter promoter found in contempt for aiding contempt of IRS summons).

"Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum." *Waffenschmidt v. MacKay*, 763 F.2d 711, 714-716 (5th Cir. 1985). *See also, SEC v. Homa*, 514 F.3d 661, 673-675 (7th Cir. 2008)(jurisdiction over persons who knowingly violate injunctive order, even those without any other contact with forum is necessary to proper enforcement and supervision of court's injunctive authority and does not offend due process).

For a finding of civil contempt, the moving party has the burden of showing by clear and convincing evidence that the contemnors violated a court order. The burden then shifts to the contemnors to demonstrate why they were unable to comply. *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999).

## III.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Grasshopper House operates a leading alcohol and drug addiction treatment facility, with a national clientele. For many years, Plaintiff has been doing business as Passages and Passages Malibu, and has used "PASSAGES" and "PASSAGES MALIBU" as its trademarks.

Renaissance offers a competing addiction treatment facility within a mile of the Passages facility. The facilities compete for the same national clientele, including patients from Oregon and the Pacific Northwest, and share the same price point and therapy programs. Declaration of David Kaiser, ¶ 6.

Renaissance advertises its competing treatment facility using popular search engines, including Google and Yahoo. Under the control of its founder and CEO Petrucci, Renaissance purchases search terms such as "PASSAGES" in order to divert customers who are searching for competitor facilities on the internet. Kaiser Dec., ¶ 4. This means that when a prospective

customer types in an internet search for a competitor such as "PASSAGES", the customer is directed to sponsored links for the Renaissance website. Declaration of Melissa Smith, ¶ 2; Exs A1-A20 (internet searches for "PASSAGES" resulting in sponsored links to Renaissance).

Diverting internet traffic from competitors is Renaissance's primary marketing tool, and "search" was a core job function when Renaissance hired Marketing Director Sarah Harris. Kaiser Dec. ¶ 4. CEO Petrucci and Director Harris bid on search terms almost daily, and the amount Renaissance paid reflected the order in which Renaissance's website link would appear in the search results, which was often at the top. *Id.* To date, computer screen shots show that Google searches for Plaintiffs' mark "PASSAGES" continues to generate Sponsored Links for www.maliburecovery. Smith Dec. ¶ 2. The URL "maliburecovery.com" is administered by Sal Petrucci, according to a publicly available database. *Id.* at ¶ 3.

Renaissance Malibu Foundation is intertwined with Renaissance Recovery Services LLC and NNB Recovery Services LLC, and the entities operate under the common control of Founder and CEO Petrucci. Kaiser Dec. ¶ 3. Petrucci incorporated the Foundation as an arm of Renaissance in order to subsidize the cost of treatment at Renaissance, conduct community outreach and raise public awareness, and enable clients to use Renaissance's services. *Id.* Renaissance and its Foundation share a website at the same domain http://maliburecovery.com. Smith Dec. ¶4, Ex C (PDF from Renaissance website showing tab to Foundation). Petrucci is the domain administrator for the "maliburecovery.com" domain that hosts this shared website. Smith Dec. ¶ 3 ; Ex B (Whois database showing domain ownership details). Renaissance's website states : "The RENAISSANCE MALIBU FOUNDATION provides services in the area of drug and alcohol treatment. Our goal is to financially assist with alcohol and drug residential care [.]" *Id.* Thus, the Foundation induces clients to use Renaissance's facility, which is commonly controlled and operated by Petrucci.

Page 5 – MEMO IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE

The entities are run by the same officers and directors, including CEO Sal Petrucci, CFO Lisa Bruno, VP Amy Petrucci, and Marketing Director Sarah Harris, have the same employees, and share the same address, website, email address, fax and phone lines. Kaiser Dec. ¶ 8; Smith Dec. ¶ 6; Ex E (Secretary of State database showing shared address). The "RENAISSANCE MALIBU" and "MALIBU RECOVERY" trademarks are registered to Petrucci individually, rather than to the business entities. Smith Dec. ¶ 7, Ex I (trademark registrations). In sum, Petrucci controls Renaissance Foundation and its legally identifiable entities.

Recovery is big business. Patients spend approximately $60,000 for treatment. Kaiser Dec. ¶ 10. Passages conservatively estimated that prospective customers diverted to Renaissance's website over a one year period cost it approximately $ 560,000 in lost profits, irrespective to damage to reputation and compromised treatment. Declaration of Chris Prentiss filed 11/3/2009 [Docket #46] (filed under seal).

**a.      Petrucci et al received actual notice of the injunction.**

On July 7, 2009, Plaintiffs filed a complaint for trademark infringement against Renaissance Malibu Foundation and other defendants. Renaissance Malibu Foundation was served a copy of the complaint but did not file an appearance. The Foundation and its affiliated LLCs share a common email address, phone lines, business address, officers and employees. Kaiser Dec. ¶ 8. Renaissance's Executive Director Kaiser discussed the complaint with CEO Petrucci and Director Harris. *Id*.

On October 21, 2009, Plaintiffs counsel notified the Foundation at info@maliburecovery.com (a shared address with the other Renaissance entities) that the time for filing an answer to the complaint had expired. Smith Dec. ¶ 9; Ex K (10/21/09 email from counsel).

On November 11, 2009, District Court Judge Ancer Haggerty entered a default judgment enjoining "defendant Renaissance Malibu Foundation, *and its officers, directors, employees, agents, servants, and all persons, firms, corporations, franchisees and associates in concert or participation* with Defendants are permanently enjoined from doing any of the following:

     a. conducting or doing business, in any capacity, using plaintiff's trade dress or trademarks, or any confusingly similar marks, trade dress, designations or variations thereof;
     b. using the plaintiffs' trademarks "Passages", "Passages Silver Strand" and "Passages Malibu" or trade dress, or any confusingly similar marks, trade dress, derivative or form thereof, in connection with the advertisement, sale or offering for sale of goods and services, including (i) use in any internet advertising programs (including as text, headlines or keywords), promotional materials, and web sites; (ii) use as a targeted keyword phrase in internet advertising; and (iii) use as Google Adwords or similar search engine advertising use.  (Emphasis added).

The Court awarded judgment of $750,000.00 (based on estimated lost profits) with post-judgment interest, costs and reasonable attorney fees.

On December 10, 2009, Plaintiff's counsel sent notice to Renaissance Foundation (at a common address with its related entities) and its Registered Agent that a judgment had been entered.  Smith Dec. ¶ 10; Ex L.  Former Executive Director Kaiser received notice that a judgment has been entered against Renaissance Foundation, which was sent to an address and email shared with the other Renaissance entities.  When Kaiser questioned Petrucci about the judgment, Petrucci told not to worry because the wrong entity had been sued.  Kaiser Dec. ¶ 9.

This Court's judgment has been registered in the C.D. Cal. where Petrucci and Renaissance are located, and a judgment-debtor exam was scheduled for May 24, 2010.  To aid in enforcing the judgment, on April 28, 2010, Plaintiffs filed a second action in the C.D. California against Defendants Renaissance Recovery Services, LLC, NNB Recovery Services, LLC, and Salvatore Petrucci, an individual, alleging unfair competition, unjust enrichment, injury to business reputation.  (CV103198 DMG (JCx)).

**b.      Petrucci and entities under his control continue to willfully infringe.**

Renaissance's Former Executive Director and COO, David Kaiser, further establishes that Petrucci and entities under his control knowingly violated the injunction.  Kaiser served under Petrucci at Renaissance Malibu for about 20 months.  Kaiser took all incoming calls at Renaissance and received many calls from customers who believed they were calling Passages, Betty Ford, and other competing facilities.  Kaiser Dec. ¶ 4.  Kaiser questioned why customers thought they were calling competitors and learned from Petrucci that Renaissance used key words from competing facilities as search terms, such "PASSAGES" and "BETTY FORD".  *Id.* at ¶ 5.  Petrucci and his Marketing Director Sarah Harris chose the search terms in order to capture customers who were searching for competitors.  *Id.*  Petrucci paid for search terms using competitors' names by bidding for the terms on Google, Yahoo, MSN/Bing, ASK.com.  *Id.*

Executive Director Kaiser was concerned that Renaissance was using the intellectual property of competitors to misdirect internet traffic and complained to both CEO Petrucci and Marketing Director Sarah Harris about this unlawful practice.  Kaiser Dec. ¶6.  Petrucci and Harris ignored his objections and continued purchasing competitors names and trademarks as ad words.  Kaiser even showed them federal law to show them the practice was unlawful, but Petrucci and Harris continued using other's trademarks as search terms.  *Id.*  Kaiser's declaration shows that Petrucci knowingly violated the injunction and continued to willfully infringe Plaintiffs trademarks long after his Executive Director complained to him about Renaissance's unlawful internet search practices.

Despite his notice of the injunction, Petrucci willfully continues to use other entities to violate the injunction's prohibition against using Plaintiffs' trademarks in paid search advertising. To date, computer screen shots show that Google searches for Plaintiffs' mark "PASSAGES" consistently generate Sponsored Links for www.maliburecovery.  Smith Dec. ¶2;

Ex A1-A20 (internet searches).   The URL "maliburecovery.com" is administered by Sal

Petrucci, according to a publicly available database.  Smith Dec. ¶ 3; Ex B.  Thus, Petrucci,

principal officer of the enjoined Renaissance Foundation, who is both bound and on notice of the

injunction, continues to willfully infringe through legally identified entities under his control.

This infringement has continued since this Court ordered a permanent injunction.  Plaintiffs

continue to suffer damages for this prohibited infringement as prospective customers are

misdirected to Renaissance.

On May 12, 2010, Plaintiffs attorneys contacted Petrucci's attorney and asked that

Petrucci "immediately cease and desist from using PASSAGES MALIBU and all other Passages

marks in all online marketing, including Google AdWords.  We have a court-ordered injunction

against all persons and companies associated with Renaissance to stop, and are in the process of

preparing an application for contempt sanctions because he refuses to comply."  (Smith Dec. ¶

11; Ex M.

On May 13, 2010, Plaintiffs counsel provided a courtesy copy of the Judgment and

Permanent Injunction to Petrucci's counsel and demanded that Petrucci stop using Plaintiffs

marks as Google AdWords.   *Id.*

### IV.    Argument

As the Founder and CEO of Renaissance Recovery, NNB, and Renaissance Foundation,

and the person who controlled the purchase of key words, Petrucci and the entities he controls

should be held in contempt.  As the Ninth Circuit stated when holding non-party principal

officers in contempt:

> "It is imperative that we hold these officers in contempt if we are to have respect for and
> obedience to our orders in such cases.  Our order was intended to protect legal rights.
> Contempt proceedings are unnecessary when such rights are honored.  Responsibility
> must reach those with the power to alter the prohibited conduct."

**Page 9** – MEMO IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE

*NLRB v. Sequoia*, 568 F.2d at 634.

Here, Petrucci and his entities Renaissance Recovery Services, LLC and NNB Recovery Services, LLC are properly within the scope of the injunction because: 1) Petrucci is the principal incorporating officer of the enjoined Renaissance Malibu Foundation with actual notice of the injunction; and (2) Petrucci is CEO of Renaissance Recovery Services, LLC and NNB Recovery Services, LLC, legally identifiable entities that continue to willfully violate the injunction. *NLRB,* 568 F.2d at 633 ("It can hardly be argued that the principal officers of a labor union are not legally identified with it, and thus liable in contempt for disobeying an order directed to the union.") *Backo,* 438 F.2d at 180-81 (non-party union leaders held in contempt when they were given notice of the court order and treated it as a "big joke").  Here, the Injunction states on its face that it applied to Renaissance Malibu Foundation's "officers, directors, employees, agents, servants, and all persons, firms, corporations, franchisees and associates in concert or participation with Defendants",  which obviously includes Petrucci, its CEO.

Because Petrucci received a copy of the Injunction, which states on its face that it applied to him, he was on notice of its terms.  *Electrical Workers* 340 F.3d 373 (non-party officer and shareholder held in contempt for failure to obey court's judgment and order).  Petrucci is not exempt from contempt proceedings merely because the injunction was entered against his non-profit foundation, of which he is a principal officer.  *See, FTC v. Gill*, 183 F.Supp. 1171, 1184-85 (C.D. Ca. 2001)(non-profit status of organization did not exempt it from civil contempt proceedings against principal officer, where organization was mere alter ego of its owner and founder).  Petrucci and legally identifiable entities under his control continue to willfully infringe by using Plaintiffs trademarks in internet advertising to divert prospective customers, and should be held in contempt for their willful disobedience of this Court's order.

V.    **Request for Sanctions**

Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both.  *See, United States v. United Mine Workers*, 330 U.S. 258, 303-04, S.Ct. 677, 91 L.Ed. 884 (1947).  This Court previously awarded a default judgment of $750,000 with interest, costs and attorney fees. Plaintiff conservatively estimated that Renaissance's trademark infringement and resulting customer confusion cost it lost profits of $560,000 over a one year period.  *See*, Declaration of Chris Prentiss in Support of Motion for Default Judgment filed 11/3/2009 [Docket # 46] (filed under seal)).  Pro-rated, lost profits for the nearly 6 month period since the injunction was entered are conservatively estimated at $280,000.   15 U.S.C. § 1117 authorizes treble damages and attorney fees in an exceptional case where the infringement can be defined as "malicious, fraudulent, or willful."  *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9TH Cir. 2002).

Plaintiff respectfully requests that the Court exercise its discretion to treble this amount for a contempt judgment of $840,000, given Renaissance's willful continued infringement in the face of an injunction and repeated warnings by counsel and its own former Executive Director. Plaintiff further requests its attorney fees incurred in bringing this motion.

Respectfully submitted:

Dated: May 25, 2010                    /s/ Bradley M. Ganz

Bradley M. Ganz, OSB 94076
Lainie Block OSB 94252
(503) 844-9009
Attorneys for Plaintiffs Grasshopper House LLC
and Passages Silver Strand LLC